IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN VISCOUNTE and | : | |
| JEAN VISCOUNTE | : | |
| | : | NO.  11-06387 |
| vs. | : | |
| | : | |
| LIBERTY MUTUAL GROUP | : | |
| | : | |

## **ORDER**

AND NOW, this                day of                  , 2012, upon consideration of

defendant's motion for summary judgment and plaintiffs' response thereto, it is hereby

ORDERED that the motion is GRANTED.  Plaintiffs' complaint is dismissed with prejudice.


BY THE COURT:


_____
                                             J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

JONATHAN VISCOUNTE and　　　　　:
JEAN VISCOUNTE　　　　　　　　　:
　　　　　　　　　　　　　　　　:　　NO.  11-06387
　　　　vs.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
LIBERTY MUTUAL GROUP　　　　　　:
_____:

### DEFENDANT THE FIRST LIBERTY INSURANCE CORPORATION'S (INCORRECTLY CHARACTERIZED AS "LIBERTY MUTUAL GROUP") MOTION FOR SUMMARY JUDGMENT

Defendant The First Liberty Insurance Corporation (incorrectly characterized as "Liberty Mutual Group") (hereinafter "First Liberty") respectfully submits this motion for summary judgment, and in support thereof avers as follows:

1.　　First Liberty issued a homeowners' insurance policy to plaintiffs bearing number H36-288-152570-600-2 with a policy period from September 17, 2010 to September 17, 2011. A true copy of the policy is attached at Exhibit "A."

2.　　For an additional premium, plaintiffs purchased sump pump coverage from First Liberty with limits of $10,000.  A true copy of the endorsement is attached at Exhibit "B."

3.　　The sump pump coverage was added to the policy via an endorsement, form FMHO 2062.  See Exhibit "B."

4.　　The endorsement stated, in pertinent part (emphasis added):

For an additional premium, we cover risks of direct physical loss described in Coverage A - Dwelling and Coverage C - Personal Property described below when caused by a peril listed below, unless the loss is excluded in this policy.

　　　*　　　*　　　*

2.　　Sump Pump Overflow, meaning only direct loss to covered property

caused by water which overflows **or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system or other type system** designed to remove subsurface water from the foundation area of the "residence premises".

Direct physical loss caused by water which backs up through sewers or drains due to the mechanical failure of a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area of the "residence premises" is covered.

       *       *       *

See Exhibit "B."

5.      If plaintiffs did not add the endorsement, there would be no coverage for any sump pump water discharges under the policy.  This is because sump pump losses were precluded by exclusion 1c in Section I of the policy, which provided:

**SECTION I - EXCLUSIONS**

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

       *       *       *

c.      **Water Damage**, meaning:
       *       *       *

(2)      Water which backs up through sewers or drains or which overflows from a sump pump; or
       *       *       *
Direct loss by fire, explosion or theft resulting from water damage is covered.

See Exhibit "A."

6.      The FMHO2062 endorsement removed exclusion 1c in Section I of the policy.

See Exhibits "A" and "B."

7.      Plaintiffs are the owners of a residential property located at 1304 Welsh Road,

2

Ambler, Pennsylvania.  Deposition of Jonathan Viscounte at p. 9 lines 9-11, a true copy is attached at Exhibit "C."

8.      On March 12, 2011, plaintiffs' basement sustained a loss when water discharged from their sump pump.  Deposition of Jonathan Viscounte at p. 10 lines 8-22.

9.      Mr. Viscounte observed that the water came from the joint where the sump pump connected to the discharge pipe.  Deposition of Jonathan Viscounte at p. 21 lines 6-10.

10.     At his deposition, Mr. Viscounte testified that the sump pump was the only source of the water in the basement.  Deposition of Jonathan Viscounte at p. 24 line 24 to page 26 line 13.

11.     Mr. Viscounte contacted a plumber, Damien Wilson, of A Quality Plumbing and Heating, for emergency repairs.  Deposition of Jonathan Viscounte at p. 26 lines 15-22; p. 28 lines 16-20.

12.     On March 12, 2011, Mr. Wilson inspected the basement.  Deposition of Damien Wilson at p. 12 lines 4-21.  A true copy is attached at Exhibit "D."  Mr. Wilson determined that a broken check valve and discharge pipe on the sump pump failed and caused the basement to flood.  See a true copy of the invoice from the plumber attached at Exhibit "E";  Deposition of Damien Wilson at p. 19 line 24 to p. 22 line 4.

13.     At his deposition, Mr. Wilson testified that the discharge pipe was the pipe which took water from the sump pump to the outside.  Deposition of Damien Wilson at p. 16 lines 19-22.

14.     The discharge pipe was directly connected to the sump pipe via a check valve. Deposition of Damien Wilson at p. 17 lines 8-22.  The water discharge occurred at the joint.

3

15.    Mr. Wilson testified that the discharge pipe exclusively serviced the sump pump and did not service any other plumbing.  Deposition of Damien Wilson at p. 21 line 24 to p. 22 line 4.

16.    Mr. Viscounte contacted First Liberty and made an insurance claim.

17.    On March 16, 2011, defendant's claim representative, Matthew Bailey, inspected the property and met with Mr. Viscounte.  Deposition of Jonathan Viscounte at p. 29 line 21 to p. 30 line 7.

18.    Mr. Bailey also communicated with the plummer, Mr. Wilson.  As part of his communications, Mr. Wilson provided a note to Mr. Bailey regarding his opinion on the cause of the discharge.  On March 12, 2011, the plumber's office wrote the following to Mr. Bailey:

> Plumber found broken check valve & pipe to sump pump failed & caused basement to flood.

See Exhibit "E."

19.    Based on his inspection, the opinion of the plumber and his conversations with Mr. Viscounte and Mr. Wilson, Mr. Bailey determined that the sump pump coverage applied and he paid plaintiffs the $10,000 policy limits on March 16, 2011.

20.    On October 30, 2011, plaintiffs filed the present lawsuit.  The complaint alleges causes of action for bad faith (count I), breach of contract and breach of the covenant of good faith and fair dealing (count II) and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (count III).  A true copy of the complaint is attached at Exhibit "F."

21.    Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

22.     First Liberty correctly paid plaintiffs the $10,000 policy limits for sump pump discharge.

23.     The undisputed facts show that the water discharge occurred at the joint where the sump pump connected to the discharge pipe via a check valve.

24.     The joint where the sump pump was connected to the discharge pipe clearly falls within a "sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area." This is especially true because the discharge pipe was attached to the sump pump via the check valve and exclusively serviced the sump pump.

25.     Furthermore, the joint is part of the "sump pump system."

26.     The term "system" is not defined by the policy and the court should look to the ordinary or commonly understood definition of the term to evaluate it in the context of the policy. Webster's Online Dictionary defines "system," inter alia, as:

   1.  a regularly interacting or interdependent group of items forming a unified whole <a number *system*>:

    *   *   *

   d:  a group of devices or artificial objects or an organization forming a network especially for distributing something or serving a common purpose <a telephone *system*> <a heating *system*> <a highway *system*> <a computer *system*>

    *   *   *

27.     The discharge pipe and joint were a part of the sump pump, the sump pump well

discharge system, or a system designed to remove subsurface water.

28.    Since First Liberty correctly paid plaintiffs' claim at the policy limits of $10,000.

plaintiffs' causes of action in count II should be dismissed and there is no breach of contract or

breach of the covenant of good faith and fair dealing as a matter of law.

29.    Plaintiffs have filed count I of their complaint pursuant to Pennsylvania's Bad

Faith Statute, 42 Pa. C.S.A. § 8371.

30.    When an insurer correctly interprets the policy there is no bad faith as a matter of

law. Morrison v. Mountain Laurel Assurance Co., 748 A.2d 689 (Pa. Super. 2000); Amitie One

Condo. Ass'n. v. Nationwide Prop. and Cas. Ins. Co., 2010 WL 1052911 (M.D. Pa. 2010);

31.    Since First Liberty made the correct claims decision, First Liberty is entitled to

summary judgment against count I (bad faith).

32.    In addition, summary judgment is also warranted against count I because First

Liberty had a reasonable basis for its position and because plaintiffs cannot show any evidence of

bad faith.

33.    In order for an insurance company to defeat a claim for bad faith on a summary

judgment motion, an insurance company need not show that the process used to reach its

conclusion was "flawless or that its investigatory methods eliminated possibilities at odds with its

conclusion." Cantor v. Equitable Life Assur. Soc'y. of the U.S., 1999 WL 219786, 2 (E.D. Pa.

1999). Rather, an insurance company simply must show that it conducted an investigation

"sufficiently thorough to yield a reasonable foundation for its action." Cantor, 1999 WL 219786

at 2.

34.    The determination of what is a reasonable basis can be decided as a matter of law

on a motion for summary judgment.  McCullough v. Northwestern Mut. Life Ins. Co., 2007 WL

4440954, 4 (W.D. Pa. 2007).

35.     Importantly, in ruling on a motion for summary judgment, the judge must view the

evidence presented through the "prism of the substantive evidentiary burden of the cause of

action." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-255, 106 S.Ct. 2505, 2513-2514

(1986).  As such, plaintiffs must present clear and convincing evidence of bad faith in response to

this motion since the standard for determining bad faith is clear and convincing evidence.

36.     In the case at bar, First Liberty had a reasonable basis for its position that the

endorsement applied.  A reasonable basis existed from the plumber's note which stated that "a

broken check valve and discharge pipe on the sump failed and caused the basement to flood."

Furthermore, the discharge occurred at the joint where the discharge pipe connected to the sump

pump.  It is also undisputed that the discharge exclusively serviced the sump pump.

37.     Furthermore, plaintiffs cannot show by clear and convincing evidence any facts

which prove that First Liberty's investigation was insufficient.  First Liberty met with Mr.

Viscounte, inspected the property, and obtained Mr. Wilson's view on the cause of the loss.

38.     First Liberty is entitled to summary judgment against count II (bad faith).

39.     In count III of their complaint, plaintiffs assert a cause of action under the

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1 et. seq.

(hereinafter "UTPCPL").

40.     There are multiple reasons why count III should be dismissed.  First, count III

alleges nonfeasance which is not actionable under the UTPCPL.  Second, plaintiffs cannot show

the elements of common law fraud, including any misrepresentation.  Third, plaintiffs cannot

show any causation, reliance or damages resulting from a misrepresentation.

41.     In an action against an insurance company under the UTPCPL, failure to pay

benefits under an insurance policy (nonfeasance) is not actionable.  Horowitz v. Federal Kemper

Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995).

42.     The averments in plaintiffs' complaint plead nonfeasance in failing to pay their

claim, which is not actionable.  Plaintiffs aver the following at paragraph 36 of count III:

> Defendants' conduct surrounding the refusal to provide coverage for the full extent
> of the damages to Plainitffs' basement constitutes "Unfair and Deceptive Act or
> Practices."

43.     While count III should be dismissed because it is legally non-viable, even if the

evidence is considered on the merits, count III should still be dismissed.

44.     To prove a claim under the UTPCPL, the claimant must prove an "ascertainable

loss as a result of the defendant's prohibited action."  Id., 777 A.2d at 446.  A claimant must prove

that a misrepresentation occurred and that the claimant justifiably relied on the misrepresentation.

Toy v. Metro. Life Ins. Co., 863 A.2d 1 (Pa. Super. 2004), affirmed, 593 Pa. 20, 928 A.2d 186

(2005).  This standard is the same as common law fraud.  Sewak v. Lockhart, 699 A.2d 755 (Pa.

Super 1997).  A plaintiff must prove all of the elements of common law fraud for a UTPCPL

claim to exist.  Huu Nam Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140 (3rd Cir. 2005).

45.     There is simply no evidence in the record which supports count III.

46.     There are no misrepresentations or fraud.  There is no evidence in the record that

satisfies the requirements of common law fraud.  Plaintiffs cannot must show an "ascertainable

loss" caused by a specific misrepresentation.  Summary judgment is warranted against count III.

47.     For all the reasons above, First Liberty moves for summary judgment against plaintiffs' complaint.

**WHEREFORE**, defendant The First Liberty Insurance Corporation respectfully requests that this honorable court grant its motion for summary judgment and dismiss plaintiffs' complaint with prejudice.                       Respectfully submitted,

BENNETT, BRICKLIN & SALTZBURG LLC

Date:   April 30, 2012          By:_____

                                    Pamela A. Carlos
                                    Chester F. Darlington
                                    1601 Market Street, 16th Floor
                                    Philadelphia, PA 19103
                                    (215) 561-4300

                                    Attorneys for defendant The First Liberty Ins. Corp.

9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                    :

JONATHAN VISCOUNTE and         :
JEAN VISCOUNTE                :
                                    :      NO.  11-06387

        vs.                :

LIBERTY MUTUAL GROUP         :
_____:

## DEFENDANT THE FIRST LIBERTY INSURANCE CORPORATION'S (INCORRECTLY CHARACTERIZED AS "LIBERTY MUTUAL GROUP") MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant The First Liberty Insurance Corporation (incorrectly characterized as "Liberty Mutual Group") (hereinafter "First Liberty") respectfully submits this memorandum of law in support of its motion for summary judgment.

First Liberty is plaintiffs' homeowners' insurer.  Plaintiffs submitted a claim to First Liberty when their basement flooded as a result of water discharging from their sump pump. Specifically, the leak occurred at that place on the sump pump where the discharge pipe connected to the sump pump via a check valve.  Plaintiffs' insurance policy contained a back-up of sewer and sump pump endorsement.  Pursuant to same, First Liberty paid plaintiffs the $10,000 policy limit for the loss.  In this lawsuit, plaintiffs assert that the discharge was not encompassed by the sump pump coverage and that they are entitled to unlimited coverage under the policy.  Plaintiffs have sued First Liberty for breach of contract, bad faith and violation of the Pennsylvania unfair trade practices law.

As is discussed below, First Liberty is entitled to summary judgment against plaintiffs' causes of action for breach of contract and bad faith because the undisputed facts show that

plaintiffs' loss was caused by the discharge of water from their sump pump and sump pump system. Moreover, plaintiffs' bad faith cause of action should be dismissed because the facts show that First Liberty had a reasonable basis for its claims position and its claim investigation was sufficient and thorough. Last, plaintiffs' Unfair Trade Practices cause of action is not viable because it alleges nonfeasance and there are no facts in the record evidencing fraud.

## I.   BACKGROUND

### A.   The First Liberty Insurance Policy Issued to Plaintiffs

First Liberty issued a homeowners' insurance policy to plaintiffs bearing number H36-288-152570-600-2 with a policy period from September 17, 2010 to September 17, 2011.[1] For an additional premium, plaintiffs also purchased sump pump coverage from First Liberty. The sump pump coverage was added to the policy via an endorsement, form FMHO 2062.[2] The endorsement stated, in pertinent part (emphasis added):

> For an additional premium, we cover risks of direct physical loss described in Coverage A - Dwelling and Coverage C - Personal Property described below when caused by a peril listed below, unless the loss is excluded in this policy.
>
> *        *        *
>
> 2.       Sump Pump Overflow, meaning only direct loss to covered property caused by water which overflows **or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system or other type system** designed to remove subsurface water from the foundation area of the "residence premises".
>
> Direct physical loss caused by water which backs up through sewers or drains due to the mechanical failure of a sump pump, sump pump well, sump pump well

---

[1]       A true copy of the policy is attached at Exhibit "A."

[2]       The form is contained in the policy at Exhibit "A." For ease of reference, the form is also attached at Exhibit "B."

2

discharge system or other type system designed to remove subsurface water from the foundation area of the "residence premises" is covered.

> \*        \*        \*

The endorsement provided up to $10,000 in coverage (less the $1,000 deductible) for accidental "discharges from within a sump pump, sump pump well, sump pump well discharge system or other type system." Notably, if plaintiffs did not add the endorsement, there would be no coverage for any sump pump water discharges under the policy. This is because sump pump losses were precluded by exclusion 1c in Section I of the policy, which provided:

> **SECTION I - EXCLUSIONS**
>
> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> \*        \*        \*
>
> c.        **Water Damage**, meaning:
> > \*        \*        \*
> >
> > (2)        Water which backs up through sewers or drains or which overflows from a sump pump; or
> >
> > \*        \*        \*
>
> Direct loss by fire, explosion or theft resulting from water damage is covered.

The FMHO2062 endorsement removed this exclusion from the policy.

**B.        The Water Discharge from Plaintiffs' Sump Pump and First Liberty's Payment of the $10,000 Policy Limits**

Plaintiffs are the owners of a residential property located at 1304 Welsh Road, Ambler, Pennsylvania.[3] On March 12, 2011, plaintiffs' basement sustained a loss when water discharged

---

[3]        Deposition of Jonathan Viscounte at p. 9 lines 9-11, a true copy is attached at Exhibit "C."

3

from their sump pump.[4]  On this day, plaintiffs woke up and discovered that the basement was

filled with a couple of feet of water.[5]  Plaintiffs contacted Servpro, an emergency property

remediation company, who pumped the water out of the basement.[6]  Mr. Viscounte went into the

basement and observed that the water came from the sump pump.  Specifically, Mr. Viscounte

observed that the water came from the joint where the sump pump connected to the discharge

pipe.[7]  At his deposition, Mr. Viscounte testified that the sump pump was the only source of the

water in the basement.[8]

    After he had the basement pumped out, Mr. Viscounte contacted a plumber, Damien

Wilson, of A Quality Plumbing and Heating, for emergency repairs.[9]  Mr. Wilson came to

plaintiffs' property on that same day, March 12, 2011.[10]  Mr. Wilson determined that a broken

check valve and discharge pipe on the sump pump failed and caused the basement to flood.[11]  At

his deposition, Mr. Wilson testified that the discharge pipe was the pipe which took water from

---

[4]    Deposition of Jonathan Viscounte at p. 10 lines 8-22.

[5]    Deposition of Jonathan Viscounte at p. 18 lines 7-14.

[6]    Deposition of Jonathan Viscounte at p. 19 line 15 to page 20 line 18.

[7]    Deposition of Jonathan Viscounte at p. 21 lines 6-10.

[8]    Deposition of Jonathan Viscounte at p. 24 line 24 to page 26 line 13.

[9]    Deposition of Jonathan Viscounte at p. 26 lines 15-22; p. 28 lines 16-20.

[10]    Deposition of Damien Wilson at p. 12 lines 4-21.  A true copy is attached at Exhibit "D."

[11]    See invoice from the plumber attached at Exhibit "E";  Deposition of Damien Wilson at p. 19 line 24 to p. 22 line 4.

4

the sump pump to the outside.[12]  The discharge pipe was directly connected to the sump pipe via a

check valve.[13]  The water discharge occurred at the joint.  Mr. Wilson testified that the discharge

pipe exclusively serviced the sump pump and did not service any other plumbing.[14]

Mr. Viscounte contacted First Liberty and made an insurance claim.  On March 16, 2011,

defendant's claim representative, Matthew Bailey, inspected the property and met with Mr.

Viscounte.[15]  Mr. Bailey also communicated with Mr. Wilson.  As part of his communications, Mr.

Wilson provided a note to Mr. Bailey regarding his opinion on the cause of the discharge.  On

March 12, 2011, the plumber's office wrote the following to Mr. Bailey:

> Plumber found broken check valve & pipe to sump pump failed & caused
> basement to flood.

Based on his inspection, the opinion of the plumber and his conversations with Mr. Viscounte and

Mr. Wilson, Mr. Bailey determined that the sump pump coverage applied and he paid plaintiffs

the $10,000 policy limits on March 16, 2011.  Mr. Bailey also waived the $1,000 deductible.[16]

### C.   Plaintiffs' Complaint

On October 30, 2011, plaintiffs filed the present lawsuit.  The complaint alleges causes of

action for bad faith (count I), breach of contract and breach of the covenant of good faith and fair

dealing (count II) and violation of the Pennsylvania Unfair Trade Practices and Consumer

---

[12]     Deposition of Damien Wilson at p. 16 lines 19-22.

[13]     Deposition of Damien Wilson at p. 17 lines 8-22.

[14]     Deposition of Damien Wilson at p. 21 line 24 to p. 22 line 4.

[15]     Deposition of Jonathan Viscounte at p. 29 line 21 to p. 30 line 7.

[16]     Deposition of Jonathan Viscounte at p. 35 lines 4-21.

5

Protection Law (count III).[17]  Plaintiffs assert in their complaint that the sump pump endorsement does not apply to the loss.  Plaintiffs contend that the leak from the sump pump's discharge pipe joint does not constitute a water discharge "from within a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water." Plaintiffs contend that the discharge was from ordinary plumbing not associated with the sump pump.

## II.   **QUESTIONS PRESENTED**

A.   Does the sump pump endorsement apply?

*Suggested Answer*:   Yes.

B.   Did plaintiffs' loss occur from a discharge of water from within a sump pump, sump pump well, sump pump well discharge system or other type of system designed to remove subsurface water?

*Suggested Answer*:   Yes.

C.   Did First Liberty have a reasonable basis to apply the sump pump endorsement?

*Suggested Answer*:   Yes.

D.   Is plaintiffs' cause of action for unfair trade practices non-viable because it asserts nonfeasance?

*Suggested Answer*:   Yes.

E.   Should the court grant First Liberty's motion for summary judgment?

*Suggested Answer*:   Yes.

---

[17]     See complaint attached at Exhibit "F."

6

## IV.    LEGAL DISCUSSION

### A.    Summary Judgment Standard

Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party cannot rest upon the allegations in his pleadings in response to a motion for summary judgment. Instead, a party opposing summary judgment must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." In re TMI, 89 F.3d 1106, 1116 (3d Cir. 1996) [internal citation omitted].

### B.    First Liberty Correctly Applied the Sump Pump Endorsement and Paid Plaintiffs the $10,000 Policy Limits

First Liberty correctly paid plaintiffs the $10,000 policy limits for sump pump discharge. The undisputed facts show that the water discharge occurred at the joint where the sump pump connected to the discharge pipe via a check valve. This was confirmed by both Mr. Viscounte and Mr. Wilson. In fact, Mr. Wilson's office wrote to First Liberty that he determined that the discharge was caused when a "broken check valve and discharge pipe on the sump pump failed and caused the basement to flood." Mr. Wilson testified at his deposition that the discharge pipe exclusively serviced the sump pump and took the water that the sump pump was pumping to the outside.

Under Pennsylvania law, the unambiguous terms of an insurance policy are to be enforced as written. Pennsylvania Mfrs.' Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co., 426 Pa.

453, 233 A.2d 548, 551 (Pa. 1967).

The policy provided $10,000 in coverage for "sump pump overflow" which was defined as the following:

> Sump Pump Overflow, meaning only direct loss to covered property caused by water which overflows or accidentally discharges **from within a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water** from the foundation area of the "residence premises".

It should be noted that the above provision covers water which discharges "**from within** a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water" (emphasis added).  The joint where the sump pump was connected to the discharge pipe clearly falls within a "sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area."  This is especially true because the discharge pipe was attached to the sump pump via the check valve and exclusively serviced the sump pump.

At the very least, the joint is part of the "sump pump system."  The term "system" is not defined by the policy and the court should look to the ordinary or commonly understood definition of the term to evaluate it in the context of the policy. Webster's Online Dictionary defines "system," <u>inter alia</u>, as:

> 1.   a regularly interacting or interdependent group of items forming a unified whole <a number *system*>:
>
>     *      *      *
>
> d:   a group of devices or artificial objects or an organization forming a network especially for distributing something or serving a common purpose <a telephone *system*> <a heating *system*> <a highway *system*> <a computer *system*>

\*       \*       \*

The discharge pipe and joint were a part of the sump pump, the sump pump well discharge system, or a system designed to remove subsurface water.  At the very least, they were part of the "sump pump well discharge system" or "a system designed to remove subsurface water."  First Liberty correctly paid plaintiffs' claim at the policy limits of $10,000.  Accordingly, plaintiffs' causes of action in count II should be dismissed and there is no breach of contract as a matter of law.

C.       **As a Matter of Law There is No Bad Faith**

Plaintiffs have filed count I of their complaint pursuant to Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371.  The statutory provision states:

Section 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

Plaintiffs' bad faith cause of action is premised on the allegation that First Liberty improperly applied the sump pump endorsement by paying the $10,000 limits under the endorsement.  However, case law holds that when an insurer correctly interprets the policy there is no bad faith as a matter of law.  Morrison v. Mountain Laurel Assurance Co., 748 A.2d 689 (Pa. Super. 2000); Amitie One Condo. Ass'n. v. Nationwide Prop. and Cas. Ins. Co., 2010 WL 1052911 (M.D. Pa.

9

2010); Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742 (3rd Cir. 1999); USX

Corp v. Liberty Mut. Ins. Co., 444 F.3d 192 (3rd Cir. 2006).  Since First Liberty made the correct

claims decision, First Liberty is entitled to summary judgment against count I (bad faith).

Even if the Court denies summary judgment with regard to count II (breach of contract)

and/or holds that First Liberty's position was incorrect, there still is no bad faith as a matter of law

and First Liberty is entitled to summary judgment against count I (bad faith).  Summary judgment

is warranted against count I because First Liberty had a reasonable basis for its position and

because plaintiffs cannot show any evidence of bad faith.

According to Terletsky v. Prudential Prop and Cas. Ins. Co., 649 A.2d 680 (Pa. Super.

1994), appeal denied, 659 A.2d 560 (Pa. 1994), a cause of action for bad faith requires a plaintiff

to satisfy the following two-prong test by clear and convincing evidence: 1) the insurer did not

have a reasonable basis for its action, and 2) the insurer knew or recklessly disregarded its lack of

reasonable basis.  Negligence or an incorrect analysis of the law, or an incorrect claims decision,

is insufficient to sustain liability for bad faith.  Polselli v. Nationwide Mutual Fire Ins., 23 F.3d

747, 751 (3d Cir. 1994).

In order for an insurance company to defeat a claim for bad faith on a summary judgment

motion, an insurance company need not show that the process used to reach its conclusion was

"flawless or that its investigatory methods eliminated possibilities at odds with its conclusion."

Cantor v. Equitable Life Assur. Soc'y. of the U.S., 1999 WL 219786, 2 (E.D. Pa. 1999).  Rather,

an insurance company simply must show that it conducted an investigation "sufficiently thorough

to yield a reasonable foundation for its action." Cantor, 1999 WL 219786 at 2.  An insurance

company's substantial and thorough investigation of an insurance claim, forming the basis of the

10

company's refusal to make benefit payments, establishes a reasonable basis that defeats a bad

faith claim as a matter of law.  Cantor, supra;  Montgomery v. Federal Ins. Co., 836 F.Supp. 292,

298 (E.D. Pa. 1993).  Stated another way, a reasonable basis is all that is required to defeat a claim

of bad faith.  J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004);  Horowitz v.

Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995).  Thus, the bad faith inquiry on a

summary judgment motion is "not whether the insurer is correct, but whether there exists a

reasonable basis for denying benefits under the policy."  Leach v. Northwestern Mutual Ins. Co.,

2005 WL 3533116, 11 (W.D. Pa. 2005);  Krisa v. Equitable Life Assur. Soc'y., 113 F. Supp. 2d

694, 703 (M.D. Pa. 2000).  As stated in Krista:

> . . . for an insurance company to show that it had a reasonable basis, an insurance
> company is not required to demonstrate its investigation yielded the correct
> conclusion or even that its conclusion more likely than not was accurate. The
> insurance company also is not required to show the process by which it reached its
> conclusion was flawless or that the investigatory methods it employed eliminated possibilities at
> odds with its conclusion. Rather an insurance company simply must show it conducted a review
> or investigation sufficiently thorough to yield a reasonable foundation for its action.

Krisa v. Equitable Life Assur. Soc'y., 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000).

The determination of what is a reasonable basis can be decided as a matter of law on a motion for

summary judgment.  McCullough v. Northwestern Mut. Life Ins. Co., 2007 WL 4440954, 4 (W.D.

Pa. 2007).

Importantly, in ruling on a motion for summary judgment, the judge must view the

evidence presented through the "prism of the substantive evidentiary burden of the cause of

action."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-255, 106 S.Ct. 2505, 2513-2514

(1986).  As such, plaintiffs must present clear and convincing evidence of bad faith in response to

this motion since the standard for determining bad faith is clear and convincing evidence.

11

In the case at bar, First Liberty had a reasonable basis for its position that the endorsement applied. A reasonable basis existed from the plumber's note which stated that "a broken check valve and discharge pipe on the sump failed and caused the basement to flood." Furthermore, the discharge occurred at the joint where the discharge pipe connected to the sump pump. It is also undisputed that the discharge exclusively serviced the sump pump. Based on a plain reading of the endorsement and these facts, First Liberty certainly had a reasonable basis for its position even if one concludes that its position was incorrect. Furthermore, plaintiffs cannot show by clear and convincing evidence any facts which prove that First Liberty's investigation was insufficient. First Liberty met with Mr. Viscounte, inspected the property, and obtained Mr. Wilson's view on the cause of the loss. First Liberty is entitled to summary judgment against count II (bad faith).

### D.  As a Matter of Law There is No Unfair Trade Practices Cause of Action

In count III of their complaint, plaintiffs assert a cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1 <u>et. seq</u>. Plaintiffs' claim under the UTPCPL is not legally viable in the first instance, and even if it is considered viable, there is no evidence in the record supporting the cause of action.

There are multiple reasons why count III should be dismissed. First, count III alleges nonfeasance which is not actionable under the UTPCPL. Second, plaintiffs cannot show the elements of common law fraud, including any misrepresentation. Third, plaintiffs cannot show any causation, reliance or damages resulting from a misrepresentation.

### 1.  The Nature of a UTPCPL Cause of Action

The nature and purpose of the UTPCPL is fraud, fraud prevention, and prevention of deceptive advertising in commerce. <u>Commonwealth by Creamer v. Monumental Properties,Inc.</u>,

459 Pa. 450, 329 A.2d 812 (1974); Weinberg v. Sun Co., 777 A.2d 442 (Pa. 2001). To assert a claim under the UTPCPL, the claimant must prove an "ascertainable loss as a result of the defendant's prohibited action." Id., 777 A.2d at 446. A claimant must prove that a misrepresentation occurred and that the claimant justifiably relied on the misrepresentation. Toy v. Metro. Life Ins. Co., 863 A.2d 1 (Pa. Super. 2004), affirmed, 593 Pa. 20, 928 A.2d 186 (2005). This standard is the same as common law fraud. Sewak v. Lockhart, 699 A.2d 755 (Pa. Super 1997). A plaintiff must prove all of the elements of common law fraud for a UTPCPL claim to exist. Huu Nam Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140 (3rd Cir. 2005).

### 2.   Plaintiffs' Complaint Alleges Nonfeasance, Which is Not Actionable under the UTPCPL

In an action against an insurance company under the UTPCPL, failure to pay benefits under an insurance policy is not actionable. Hensley v. Nationwide Mut. Ins. Co.,1999 U.S. Dist. Lexis 8797 (E.D. Pa. 1999); McFarland v. United States Fidelity and Guaranty Company, 818 F.Supp. 108 (E.D.Pa. 1993). Under Pennsylvania law, only malfeasance (the improper performance of a contractual obligation) raises a cause of action under the UTPCPL, while nonfeasance (failure to perform a contractual duty) is not actionable. Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995).

It is well-established that an insurer's refusal or failure to pay benefits to an insured is nonfeasance, and not actionable under the UTPCPL. Klinger v. State Farm Mut. Auto. Ins. Co., 895 F.Supp. 709, 717 (E.D. Pa. 1995). In analyzing allegations of a UTPCPL claim, the court must look at the nature of the claim to determine whether plaintiff is essentially claiming that the insurance company violated the UTPCPL by failing to pay a claim. Id. at 718. In determining what that actual

basis is for the UTPCPL claim, courts have not hesitated to look beyond a plaintiff's characterizations to the substance of the claim and find the alleged UTPCPL violation, if proven, would constitute nonfeasance rather than malfeasance. <u>Caplan v. Fellheimer, Eichen, Braverman & Kaskey</u>, 5 F.Supp.2d 299, 302 (E.D. Pa. 1998); <u>Leo v. State Farm Mut. Auto. Ins. Co.</u>, 939 F.Supp. 1186, 1193 (E.D. Pa. 1996); <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 895 F.Supp. 709, 718 (M.D. Pa. 1995). Stated another way, just because a plaintiff self-titles or inserts artful averments into a UTPCPL claim sounding in "malfeasance" does not make it a malfeasance claim. <u>Caplan v. Fellheimer, Eichen, Braverman & Kaskey</u>, 5 F.Supp.2d 299 at 302.

Here, the averments in plaintiffs' complaint plead nonfeasance in failing to pay their claim, which is not actionable. In fact, plaintiffs aver the following at paragraph 36 of count III:

> Defendants' conduct surrounding the refusal to provide coverage for the full extent of the damages to Plainitffs' basement constitutes "Unfair and Deceptive Act or Practices."

All of the other allegations in the complaint are derivative of this claim. In fact, plaintiffs' claims are very similar to the allegations in the case of <u>Leo v. State Farm Mut. Auto. Ins. Co.</u>, 939 F.Supp. 1186, 1193 (E.D. Pa. 1996), where the court dismissed a UTPCPL claim when it determined that the allegations of misconduct were all derivative of the alleged failure to pay the claim.

### 3. <u>Plaintiffs Cannot Show Any Evidence Supporting a UTPCPL Cause of Action</u>

Last, while count III should be dismissed because it is legally non-viable, even if the evidence is considered on the merits, count III should still be dismissed. There is simply no evidence in the record which supports count III. There are no misrepresentations or fraud. As stated above, to assert a UTPCPL claim a plaintiff must prove the elements of common law fraud. <u>Huu Nam Tran v. Metro. Life Ins. Co.</u>, 408 F.3d 130 (3rd Cir. 2005). Here, plaintiffs must prove a

14

misrepresentation, justifiable reliance, causation and an ascertainable loss.  Id., see also Toy v. Metro. Life Ins. Co., 863 A.2d 1 (Pa. Super. 2004).  There is no evidence in the record that satisfies the requirements of common law fraud.  Importantly, plaintiffs must show an "ascertainable loss" caused by a specific misrepresentation.  Weinberg v. Sun Co., 565 Pa. 612, 618, 777 A.2d 442, 446 (2001).  There is no such evidence in the record.

## IV.   CONCLUSION

Defendant The First Liberty Insurance Corporation respectfully requests that this honorable court grant its motion for summary judgment and dismiss plaintiffs' complaint with prejudice.

Respectfully submitted,

BENNETT, BRICKLIN & SALTZBURG LLC

Date: 4/30/12

By:_____
          Pamela A. Carlos
          Chester F. Darlington
          1601 Market Street, 16th Floor
          Philadelphia, PA 19103
          (215) 561-4300

Attorneys for defendant The First Liberty Ins. Corp.

15