IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN VISCOUNTE and JEAN VISCOUNTE,   Plaintiffs, | :<br>:  CIVIL ACTION<br>: |
| v. | :  No.: 11-cv-6387 |
| LIBERTY MUTUAL GROUP,   Defendant. | :<br>:<br>: |

**M E M O R A N D U M**

**SITARSKI, M. J.**                                                                                            **December 14, 2012**

Currently pending before the Court is a motion for summary judgment filed by Defendant First Liberty Insurance Corporation (erroneously identified as "Liberty Mutual Group"), Plaintiffs' Response, and Defendant's Reply.  For the following reasons, the motion will be **GRANTED.**

**I.      INTRODUCTION**

This case concerns a dispute over insurance coverage for losses resulting from a flood on March 12, 2011.  Doc. No. 1, ¶ 1.  Plaintiffs had entered into an insurance contract with First Liberty Insurance Company ("First Liberty"), which was in effect at the time of the flood.  The instant dispute arose because First Liberty limited coverage to ten thousand dollars ($10,000) pursuant to a sump pump endorsement clause in the contract.  Doc. No. 20, ¶¶ 2-19.  Plaintiffs argue that the sump pump endorsement does not apply to their situation, and that full coverage is warranted under the insurance contract's general policy.  Doc. No. 24, ¶ 19.

## II. PROCEDURAL HISTORY

On October 12, 2011, Plaintiffs initiated this lawsuit by filing a Complaint with the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1332.[1]  Doc. No. 1.  The Complaint alleges causes of action for bad faith (Count I), breach of contract and breach of covenant of good faith and fair dealing (Count II), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count III).  Doc. No. 1.  On December 21, 2011, First Liberty filed an Answer and also raised affirmative defenses.  Doc. No. 5.

This matter was initially assigned to District Court Judge R. Barclay Surrick.  Doc. No. 1.  On February 28, 2012, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, and the matter was referred to me.  Doc. No. 15.  On April 20, 2012, First Liberty filed the instant Motion for Summary Judgment.  Doc. No. 20.  Plaintiffs filed a Response, and First Liberty filed a Reply.  Doc. No. 24, Doc. No. 26.  Fact discovery closed on June 1, 2012.  Doc. No. 11, ¶ 1.  Accordingly, the matter is now ripe for disposition.

## III. FACTUAL BACKGROUND

Plaintiffs own a residential property located at 1304 Welsh Road, Ambler, Pennsylvania.

---

[1] Under 28 U.S.C. § 1332, all plaintiffs must be diverse from all defendants and the amount in controversy must be more than $75,000.  28 U.S.C. § 1332 (2006 & Supp. 2011).  Plaintiffs are residents and citizens of Pennsylvania. (Doc. No. 1).  First Liberty Insurance has its principal place of business in Massachusetts.  *Id.*  Plaintiffs' Complaint seeks more than $75,000 in damages.  *Id.*  Thus, the requirements for diversity jurisdiction are met.

Doc. No. 20; Doc. No. 20, Ex. C at 9.  On March 12, 2011, Plaintiffs woke up to find their entire basement flooded with approximately five feet of water.  Doc. No. 1, ¶ 11; Doc. No. 20, Ex. C at 10.  During his deposition, Plaintiff stated that he observed the water coming from the joint where the sump pump connected to the discharge pipe, and that the sump pump was the only source of water in the basement.[2]  Doc. No. 20, ¶ 9; Doc. No. 20, Ex. C at 21, 24.

On that same day, Plaintiff Jonathan Viscounte contacted Mr. Damien Wilson ("Mr. Wilson"), of "A Quality Plumbing and Heating," for emergency repairs.  Doc. No. 20, ¶ 11; Doc. No. 20, Ex. C at 26-28.  After inspecting the basement, Mr. Wilson determined that a broken check valve and discharge pipe on the sump pump failed and caused the basement to flood.  Doc. No. 20, ¶ 12; Doc. No. 20, Ex. D at 19.

At all relevant times, Plaintiffs were covered by a homeowners insurance policy issued by First Liberty.[3]  Doc. No. 20, ¶ 1; Doc. No. 20, Ex. A.  The insurance contract contained a sump pump endorsement that limited coverage to ten thousand dollars ($10,000) in cases of "sump pump overflow."  Doc. No. 20, ¶ 2; Doc. No. 20, Ex. B.  The endorsement states, in pertinent part:

> For an additional premium, we cover risks of direct physical loss described in Coverage A - Dwelling and Coverage C- Personal Property described below when caused by a peril listed below, unless the loss is excluded in this policy.
>
> \*       \*       \*
>
> 2. Sump Pump Overflow, meaning only direct loss to covered property caused by water

---

[2] According to the deposition of Damien Wilson, the plumber in this case, a sump pump "removes water from the pit with a propeller, puts it through [a discharge system], and discharges it out[doors]".  Doc No. 20, Ex. D at 23.

[3] First Liberty issued a homeowners' insurance policy to Plaintiffs bearing number H36-288-152570-600-2 with a policy period from September 17, 2010 to September 17, 2011.  Doc. No. 20 ¶ 1; Doc. No. 20, Ex. A.

which overflows or accidently discharges from within a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area of the "residence premises."

Direct physical loss caused by water which backs up through sewers or drains due to the mechanical failure of a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area of the "residence premises" is covered.

Doc. No. 20, ¶ 4; Doc. No. 20, Ex. B.

On March 14, 2011, two days after the flood was discovered, Plaintiff Jonathan Viscounte contacted First Liberty to file an insurance claim. Doc. No. 1, ¶ 14. On March 16, 2011, a First Liberty claims representative, Mr. Matthew Bailey ("Mr. Bailey"), came to inspect the property and meet with Plaintiffs. Doc. No. 20, ¶ 17; Doc. No. 20, Ex. C at 29. Mr. Bailey also communicated with the plumber, Mr. Wilson. Mr Wilson provided a note to Mr. Bailey regarding his opinion on the cause of the discharge, which read: "[p]lumber found broken check valve and pipe to sump pump failed and caused basement to flood." Doc. No. 20, ¶ 18; Doc. No. 20, Ex. E. Based on his inspection, the opinion of the plumber, and his conversations with Plaintiff Jonathan Viscounte and Mr. Wilson, Mr. Bailey determined that the sump pump endorsement, and not the general policy, applied. Doc. No. 20, ¶ 19. Mr. Bailey then issued to Plaintiffs the ten thousand dollar ($10,000) policy limit on March 16, 2011. *Id.*

Plaintiffs argue that they are entitled to full coverage under the insurance contract's general policy, and should not be limited to ten thousand dollars ($10,000) in coverage under the sump pump endorsement.

IV.   **STANDARD OF REVIEW**

Summary judgment is only appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Id.*

It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *See Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 257.

Further, when deciding a motion for summary judgment "it is inappropriate for the court

to resolve factual disputes and to resolve credibility determinations." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Additionally, to raise a genuine issue of material fact for trial a party opposing summary judgment "need not match, item for item, each piece of evidence proffered by the movant." *Id.* Rather, "if the opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of the events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent." *Id.* It is the duty of the fact-finder to determine the "believeability and weight of the evidence." *Id.*

## V.     DISCUSSION

As stated above, First Liberty filed a motion for summary judgment on Plaintiffs' claims of breach of contract, bad faith, and violation of the UTPCPL. This Court will address First Liberty's request for summary judgment as to each claim separately below.

### A.     Breach of Contract

The interpretation of an insurance contract is a question of law, which is to be decided by the court. *See Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997). The law in Pennsylvania is well-settled that when the terms of an insurance contract are clear and unambiguous, the court is required to give effect to that language. *See Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir. 1999). When the terms of the policy are ambiguous, the court should interpret them in favor of the insured and against the insurer, who drafted the contract. *See Moessner*, 121 F.3d at 900. In evaluating an ambiguity, the court must construe the terms in context of the entire contract and determine "whether the contract is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'"

*Id.* (quoting *Gamble Farm Inn Inc. v. Selective Ins. Co.*, 656 A.2d 142, 143-44 (Pa. Super. Ct. 1995)).

As stated above, the First Liberty insurance contract contained an endorsement that limited coverage to ten thousand dollars ($10,000) in cases of "sump pump overflow." Doc. No. 20, Ex. B. "Sump pump overflow" is defined by the contract as "water which overflows or accidently discharges from within a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area of the residence premises." *Id.*  The main issue here is whether the term "system" in the sump pump endorsement is ambiguous.

First Liberty contends that the term "system" in the sump pump endorsement is unambiguous, and should be enforced as written. Doc. No. 20 at 7. First Liberty argues that the joint where the sump pump connects to the discharge pipe clearly falls within a "sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area." Doc. No. 20, ¶ 24. This is especially true, First Liberty contends, because the discharge pipe was attached to the sump pump via the check valve and exclusively serviced the sump pump. *Id*. First Liberty concludes that the coverage was correctly limited to ten thousand dollars ($10,000) under the endorsement, and Count II should be dismissed as a matter of law.

Plaintiffs argue that the term "system" is ambiguous and should therefore be construed against the drafter, First Liberty. Doc. No. 24 at 10-11. In the alternative, Plaintiffs argue that water was not discharged "from within" the sump pump system, thus the sump pump failure did not cause the water infiltration. Doc. No. 24 at 9-11. Instead, Plaintiff argues that a failure of a pipe leading from the outside to the sump pump caused the water infiltration and ultimate

damage.  *Id*.  Plaintiff concludes that the sump pump endorsement should not govern their losses.

This Court finds that the term "system" in the sump pump endorsement is unambiguous, and therefore will be enforced as written.  While Pennsylvania courts have not yet addressed this exact scenario, the Superior Court of New Jersey has recently ruled on a case quite similar to the one at bar.  *See Baran v. New Jersey Manufacturers Insurance Company*, 2010 WL 4449728 *1 (N.J. Super. Ct. App. Div. Nov. 9, 2010).  In *Baran*, a rain storm "blew apart" a check valve on a pipe leading from the sump pump to outside the house, flooding plaintiff's basement.  *Id*.  The insurance policy at issue there excluded coverage for water discharging from "a sump, sump pump, or related equipment."  *Id*.  Like the Plaintiffs here, the homeowners in *Baran* also requested full coverage under the insurance contract's general policy, arguing that the check valve was not a part of the exclusion.  *Id*.  The New Jersey Superior Court rejected Plaintiffs argument in holding that "the only reasonable construction of the term 'related equipment'" . . . "encompasses the piping and other related equipment needed to discharge the water flowing out of a sump pump to a location outside the house," and denied full coverage.  *Id.*

This Court finds *Baran* instructive in resolving the instant dispute.  The contract at issue here limits coverage resulting from "water which overflows or accidently discharges from within a sump pump, sump pump well, sump pump well discharge system or other type system."  This Court finds that the only reasonable interpretation of the terms "discharge system" and "other type system" encompasses the check valve and discharge pipe.  *see e.g. Baran, supra* at *1.  This is especially true because the check valve was connected to a pipe that exclusively served the sump pump.  Doc. No. 20, ¶ 15.  Indeed, this Court cannot see how "discharge system" could be intended to mean anything other than the discharge pipe, check valve included.

Plaintiffs argument that the water infiltration did not derive "from within" the sump pump

system also fails. The record before this Court shows that the flooding occurred when water began leaking from the check valve that connected the sump pump to the discharge pipe. Doc. No. 20, ¶ 9, Doc. No. 24 at 5. Because the term "discharge system" encompasses the check valve and discharge pipe, it follows that infiltration from those sources derives from within the sump pump system.

In sum, this Court finds that the insurance policy is unambiguous, and should be enforced as written. Further, we find that First Liberty correctly interpreted the insurance policy as limiting coverage to ten thousand dollars ($10,000), since the flooding was caused by a component excluded by an unambiguous sump pump endorsement. Accordingly, First Liberty's motion for summary judgment is granted as to Count II, breach of contract.

**B.     Bad Faith**

Pennsylvania's Bad Faith Statute creates a remedy when a court finds that an insurer "acted in bad faith towards the insured." 42 Pa. C.S.A. § 8371. Plaintiffs claim that First Liberty acted in bad faith by limiting their coverage to ten thousand dollars ($10,000) under the endorsement. Doc. No. 1, ¶ 1. Further, Plaintiff argues that First Liberty failed to conduct a reasonable investigation surrounding the cause of the flood, and also failed to provide a reasonable explanation for limiting coverage under the endorsement. Doc. No. 1, ¶ 28. These actions, Plaintiff argues, constitute bad faith under the statute. *Id.*

First Liberty replies that if this Court finds that the contract was correctly interpreted, then summary judgment on the bad faith claim is also warranted. Doc. No. 20, ¶ 31. Our review of relevant case law supports First Liberty's position. Generally, when a contract is correctly interpreted, there is no bad faith. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 (3d Cir. 1999); *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 (3d Cir. 2006).

Even aside from this, turning to the merits of Plaintiffs' bad faith claim, summary judgment as to Count I would still be warranted. In order to succeed in a claim for bad faith, Plaintiffs must prove: (1) the insurer lacked a reasonable basis to deny benefits under the insurance policy; and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis. *Cantor v. Equitable Life Assur. Soc'y of U.S.,* 1999 WL 219786 *2 (E.D. Pa. Apr. 12, 1999).

The insurance company is not required to show that the process used to reach its conclusion was "flawless or that its investigatory methods eliminated possibilities at odds with its conclusion." *Id*. Instead, the insurance company is only required to show that it conducted an investigation "sufficiently thorough to yield a reasonable foundation for its action." *Id.* An insurance company's substantial and thorough investigation of an insurance claim, forming the basis of the company's refusal to make payments, establishes a reasonable basis that defeats a bad faith claim as a matter of law. *Id.*

In this case, First Liberty conducted an investigation thorough enough to reasonably conclude that the sump pump endorsement applied. Mr. Bailey did an on-site inspection, spoke with the plumber, Mr. Wilson, and with the Plaintiff, Mr. Viscounte. Doc. No. 20, ¶¶ 17-19. Notably, Plaintiffs have failed to set forth any facts explaining how First Liberty's investigation was deficient. Thus, this Court finds that First Liberty's investigation was sufficiently thorough to establish a reasonable basis for concluding that the sump pump endorsement applied. *see e.g. Cantor*, *supra*. Because First Liberty had a reasonable basis for limiting Plaintiffs coverage to ten thousand dollars ($10,000) under the endorsement, summary judgment is granted as to Count I, bad faith.

    C.    **UTPCPL**

Pennsylvania's Unfair Trade Practices and Consumer Protection Law protects consumers

against "[u]nfair methods of competition" and "unfair or deceptive acts or practices" in commerce. 73 P.S. § 201-2.4. The statute lists twenty actions that violate the UTPCPL, including a "catch all" provision against "any [] fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." § 201-2. Under Pennsylvania law, only malfeasance, the improper performance of a contractual obligation, is actionable under the UTPCPL. *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 111995). Nonfeasance, the failure to preform a contractual obligation, is not actionable. *Id.*

Plaintiffs argue that First Liberty violated the UTPCPL by limiting their insurance coverage to ten thousand dollars ($10,000). Doc. No. 1, ¶ 36. Plaintiffs do not point to any specific provision of the UTPCPL that First Liberty violated; rather, Plaintiffs simply argue that First Liberty's refusal to provide full coverage was "unfair." Doc. No. 24 at 11. First Liberty counters that Plaintiffs are alleging nonfeasance, and moves for summary judgment on the grounds that Plaintiffs' UTPCPL claim is non-viable. Doc. No. 20, ¶ 42.

It is well settled that an insurer's refusal to pay on a claim constitutes nonfeasance. *Id.* While Plaintiffs' complaint attempts to characterize First Liberty's actions in terms of improper conduct, and therefore malfeasance, it is clear that Plaintiffs' UTPCPL claim is premised on First Liberty's refusal to provide full coverage. Doc. No. 24, ¶ 36; *see also Caplan v. Fellheimer, Eichen, Braverman & Kaskey*, 5 F. Supp. 2d 299, 302 (E.D. Pa. 1998) (although complaint alleged misfeasance, court looked beyond pleadings and concluded that complaint was really about nonfeasance and denied UTPCPL claim). Accordingly, this Court finds that First Liberty's refusal to provide full coverage constitutes nonfeasance, and not misfeasance, making Plaintiff's UTPCPL claim non-viable. Therefore, First Liberty's motion for summary judgment as to Count III, UTPCPL, is granted.

## VI. CONCLUSION

In sum, this Court finds that no material questions of fact exist, rendering summary judgment appropriate in favor of Moving Defendants and against Plaintiffs for the breach of contract, bad faith, and UTPCPL claims. For the forgoing reasons, Defendant's Motion for Summary Judgment is GRANTED. An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE